Floyd WARD, Appellant,

v.

Margaret HECKLER, Secretary, Health & Human Services *, Appellee.

No. 85–2069.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 3, 1986.

Decided March 19, 1986.

* Secretary Bowen, Margaret M. Heckler's successor was appointed during the pendency of this appeal and is substituted as the appellee. *See* FED.R.APP.P. 43(c).

Dennis W. Jennings, Kansas City, Mo., for appellant.

Judith M. Strong, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and ARNOLD, Circuit Judge.

PER CURIAM.

Floyd Ward appeals from a district court[1] order granting summary judgment to the Secretary of Health and Human Services (the Secretary) in an action initiated by Ward seeking judicial review of the Secretary's denial of his application for disability benefits. We affirm.

## I. Background

Ward is a sixty-five year old man with an eighth-grade education. His past relevant employment includes work as a construction laborer and, between 1971 and 1982, work as a "beef lugger" at a meat packing plant. In December 1981, Ward fell while carrying a hindquarter of beef which landed on top of him injuring his back. He continued to work until March 22, 1982, when pain in his legs and lower back allegedly forced him to quit his job.

Ward filed the present application for a period of disability and disability insurance benefits on January 13, 1983, alleging disability due to leg and back pain, arthritis of the spine, shortness of breath, and numbness and lack of grip in his dominant right hand. The application was denied initially and on reconsideration. Ward requested and received a hearing before an ALJ concerning his claim. Subsequent to that hearing, the ALJ concluded that Ward could not return to his previous employment, but that he retained the residual functional capacity for at least medium work and perhaps did not even have a severe impairment. The ALJ discounted a treating physician's contrary assessment of Ward's residual capabilities, both because it was not objectively supported by clinical or laboratory data and because it was contradicted by the opinions of the other physicians which were supported by such data. For these and other reasons, the ALJ concluded that Ward's complaints of disabling pain were not credible. Accordingly, considering Ward's exertional limitations and nonexertional pain, and using Rule 203.03 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2

(the Guidelines) as a framework for decision-making, the ALJ concluded Ward was not disabled within the meaning of the Social Security Act (the Act). The Appeals Council affirmed the ALJ's decision on July 24, 1984, and the district court granted summary judgment to the Secretary on July 5, 1985. This appeal followed.

## II. Discussion

 Ward first contends, and correctly so, that in the context of a disability determination a treating physician's opinion is ordinarily entitled to greater weight than the opinion of a consulting physician. *Hancock v. Secretary of the Department of HEW*, 603 F.2d 739, 740 (8th Cir.1979). However, a qualified medical opinion is not conclusive in determining disability status. *Vasquez v. Schweiker*, 701 F.2d 733, 736 (8th Cir.1983). A trier of fact may discount medical reports and/or physicians' statements which are unsupported by medically acceptable clinical or diagnostic data. *Janka v. Secretary of HEW*, 589 F.2d 365, 369 (8th Cir.1978). Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature. *Brand v. Secretary of the Department of HEW*, 623 F.2d 523, 527–28 (8th Cir.1980).

 In the present case, although some medical evidence indicates that Ward suffers from physical impairments, only rather conclusory statements of one treating physician indicate that Ward's impairments are substantial or disabling. Dr. Reynolds expressed this conclusion when completing a medical report form submitted to the Social Security Administration and when answering interrogatories propounded by Ward's attorney. Although each document requested that Dr. Reynolds summarize Ward's medical problems, including the nature and source of his exertional and non-

---

1. The Honorable Joseph E. Steven, Jr., United States District Judge for the Western District of Missouri, Western Division.

exertional impairments, Dr. Reynolds did not complete those portions of the forms. Moreover, only two brief medical reports submitted by Ward in support of his claim contain any clinical or diagnostic observations by Dr. Reynolds. The first report, dated April 13, 1982, contains a brief history and the results of a general physical examination performed by Dr. Reynolds upon the occasion of Ward's admission to the hospital. At that time Dr. Reynolds noted marked spasms in Ward's lumbar muscles and a restriction in Ward's ability to raise his right leg. The second report, dated August 1, 1982, is actually a discharge summary dictated and transcribed some three months after Ward's release from the hospital in which Dr. Reynolds outlined a conservative treatment regime including rest and medication. Although in the latter report Dr. Reynolds referred to Dr. Clough's examination of Ward, and we assume that he was also aware of the EMG results reported by Ward's other physician, Dr. Allen, Dr. Reynolds' later conclusions concerning the extent of Ward's impairment do not appear consistent with these physicians' statements characterizing Ward's condition as mild. Finally, although Dr. Reynolds has treated Ward since March 1982, Ward admitted that he does not see Dr. Reynolds very often, that his prescriptions are good for one year, that on his most recent visit Dr. Reynolds did nothing more than renew his prescriptions, and that beginning three months prior to the administrative hearing he has visited the Veterans Administration Hospital each month for treatment of his condition.

In contrast, the reports of the consulting physicians were both detailed and thorough. Neither Dr. Riller nor Dr. Wilkins found any evidence of a significant arthritic condition in Ward's legs or spine. Dr. Riller explained that, in his opinion, any organic abnormalities which were found in those areas were consistent with Ward's age and prior occupation. Furthermore, in most respects the consulting physicians' findings appear to be compatible with Dr. Clough's and Dr. Allen's assessments of Ward's chronic back condition absent the acute symptoms Ward evidenced shortly after his accident.

In sum, the conclusory nature of Dr. Reynolds' opinion of the severity of Ward's condition, the contradictory medical evidence supplied by other physicians, and the factual circumstances involved in this case combine to discredit Dr. Reynolds' conclusions. Viewing the record as a whole, therefore, we conclude that the ALJ's determination to that effect was supported by substantial evidence.

Ward next contends that the ALJ failed to properly evaluate his subjective complaints of pain in accordance with the standards adopted in the Social Security Disability Benefits Reform Act of 1984 and in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). Specifically, Ward argues that the ALJ discredited his testimony because the objective medical evidence did not support his subjective complaints, and because the ALJ's personal observations of Ward at the hearing were not consistent with those complaints. The Secretary contends that the ALJ's determination was properly based upon a combination of factors, including consideration of the objective medical evidence; the ALJ's personal observations of Ward; and the quality, character and content of Ward's own testimony.

Although an adjudicator may not discount a claimant's subjective complaints solely because they are not supported by the objective medical evidence, the absence of such evidence is one factor to be considered in evaluating the credibility of the claimant's testimony and complaints. *Polaski*, 751 F.2d at 948 (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1321–22 (8th Cir. 1984)). Similarly, subjective complaints may not be discredited solely on the basis of an ALJ's personal observation of the claimant at the hearing. *Id.* In the instant case, however, the ALJ gave full consideration to Ward's complaints in the context of the remaining evidence in the record and concluded that they were not credible. The lack of objective medical support for Dr.

Reynolds' opinion and for Ward's description of the severity of his condition and the physical limitations imposed thereby were clearly factors in the ALJ's decision. The ALJ also noted that his own observation of Ward (i.e., that Ward had no apparent problem walking, sitting, standing, concentrating, remembering, or attending to his surroundings during the hearing) was a factor. However, the ALJ also discussed the existing objective medical evidence in detail. Clearly, inconsistencies existed among that evidence, the various physicians' interpretations of that evidence, and Ward's subjective complaints. Subjective complaints may be discounted where, as here, there are inconsistencies in the evidence as a whole. *Id.; see also Conley v. Bowen*, 781 F.2d 143, 146–47 (8th Cir.1986) (per curiam).

■ Ward also challenges the validity of the vocational expert's testimony, arguing that his responses to the hypothetical questions posed by the ALJ do not constitute substantial evidence because those questions failed to set out all of Ward's impairments and included assumptions not supported by the record. *Tennant v. Schweiker*, 682 F.2d 707, 711 (8th Cir.1982). Examination of the hearing transcript reveals that the ALJ actually posed a series of three hypothetical questions based upon the same description of Ward's physical impairments, but varying the severity of the limitations imposed upon Ward's physical capabilities. Contrary to Ward's contention, the ALJ's description of Ward's physical impairments does not appear deficient. The ALJ included in his description each of Ward's physical complaints and mentioned the pain Ward suffers. Two of the hypothetical questions explored the combined impact of Ward's physical impairments and the limitations Ward testified he experiences upon Ward's employability. The remaining hypothetical set forth Ward's physical limitations to the extent the ALJ found them to exist. Therefore, the hypothetical questions were appropriate in light of the ALJ's credibility determinations discussed previously.

■ Finally, Ward contends that the transcript of his administrative hearing was not sufficiently complete to ensure a fair evaluation upon judicial review of his claims. Examination of the thirty-two page transcript reveals that, on the average, between one and two times per page small portions of testimony were inaudible. The gaps appear very small, however; at most a few words at a time. Although distracting, the gaps did not interfere with comprehension of the testimony to an extent that would hinder fair review.

Accordingly, the order of the district court is affirmed.